# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

```
_____
                            :
MARIAN R. MARRACCO,         :
                            :      Civil Action No.
           Plaintiff,       :      08-713 (NLH)
                            :
     v.                     :
                            :           OPINION
ROBERT KUDER and,           :
REHABILITATION PLANNING, INC.,:
                            :
           Defendants.      :
_____ :
```

**APPEARANCES:**
JOHN P. MORRIS
142 WEST BROAD STREET
PO BOX 299
BRIDGETON, NJ 08302
*Attorney for plaintiff, Marian R. Marracco*

DANIELLE MYRIAH WEISS
HAINES & ASSOCIATES
1835 MARKET STREET
SUITE 2420
PHILADELPHIA, PA 19103
*Attorney for defendants Robert Kuder and Rehabilitation Planning, Inc.*

**HILLMAN, District Judge**

Before the Court is defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) and to dismiss plaintiff's claim brought pursuant to New Jersey's Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 et seq. For reasons explained below, defendants' motion to transfer venue is denied but its motion to dismiss plaintiff's CEPA claim is granted.

## I. JURISDICTION

This action was filed in the Superior Court of New Jersey,

Law Division and removed to this Court on the basis of diversity. This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  Plaintiff is a citizen of New Jersey.  Defendant Robert Kuder is a citizen of Pennsylvania and defendant Rehabilitation Planning, Inc. is a Pennsylvania corporation with a principal place of business in Plymouth Meeting, Pennsylvania. Defendants have alleged that plaintiff's damages claim of lost salary and compensatory damages exceeds $75,000.00.

## II.  **BACKGROUND**

Plaintiff states that she began her employment with Rehabilitation Planning, Inc. ("RPI") after she was approached by Mary Beth Miloszar, a supervisor at RPI in the summer of 2007. Plaintiff states that she was hired by RPI on the basis of her New Jersey client contacts, including her working relationship with New Jersey Manufacturers Inc. Co. ("NJM"), and having previously worked in New Jersey for RPI.

On Thursday, December 6, 2007, plaintiff met with NJM supervisors about a bill that had been sent by RPI without her knowledge in the amount of $832.00.  She approached Ms. Miloszar and spoke to her about the bill.  Plaintiff states that Ms. Miloszar first agreed to go with her to speak to the president of RPI, defendant Robert Kuder, but then later became unavailable and told plaintiff to approach Mr. Kuder herself.  Plaintiff then met with Mr. Kuder to discuss the NJM bill.  Plaintiff alleges

that Mr. Kuder refused to discuss the bill with her, or review the bill.  She alleges that at that time she accused defendants of engaging in fraudulent billing practices.  She also alleges that she learned that RPI kept all billings locked away in a separate office and that she only learned of the bill sent to NJM because it was brought to her attention by NJM.  She further alleges that she learned that Mr. Kuder's response to her complaints about the NJM bill was to "flat-rate" it to $450.00, and later to reduce it to zero.  Defendants allege that plaintiff became "quite demonstrative" on December 6, 2007, because she had to wait three hours to speak with Ms. Miloszar.  They also deny that plaintiff accused them of engaging in fraudulent billing practices.

Plaintiff states that Ms. Miloszar telephoned her repeatedly on Friday evening, December 7, 2007 and again on Sunday, December 9, 2007 and alleges that Ms. Miloszar induced her to send emails to Mr. Kuder and to another RPI employee, Barbara Stone, apologizing for plaintiff's "outburst" on Thursday, December 6, 2007.  She states that after she was induced to send the emails, Ms. Miloszar emailed her a "written warning and probation extension" on Sunday evening and then came to her house in New Jersey on the morning of December 10, 2007, to deliver a hard copy of the document.  Plaintiff alleges that Ms. Miloszar told her that if she refused to sign the warning she would be

immediately terminated.  Plaintiff refused to sign the warning and instead prepared a written response regarding her objections to the NJM billing and the events that had occurred over the past few days.  Specifically, in her response plaintiff wrote that although Ms. Miloszar's email referred to a "probation extension," it was the first time plaintiff had learned of any reference to a probationary period which included newly created productivity goals.[1]  On December 13, 2007, plaintiff resigned.

Plaintiff filed a complaint against defendants for violation of New Jersey's CEPA statute, as well as a claim sounding in common law defamation.  Plaintiff also requested that the Court enjoin defendants from disseminating the correspondence written by plaintiff to defendants regarding the events at issue in this case.  Defendants move to have this case transferred to the U.S. District Court for the Eastern District of Pennsylvania and, alternatively, to have plaintiff's CEPA claim dismissed.

---

[1]  Although the email describes the employment action as a "probation extension," defendants do not allege any facts showing that plaintiff had ever previously been on probation or subject to productivity goals.  Since all facts are taken in the light most favorable to the non-moving party on a motion to dismiss, see Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005), the Court accepts plaintiff's allegation for purposes of this motion that the probationary period including productivity goals was imposed upon her for the first time following Ms. Miloszar's December 10, 2007 email.

III.  **DISCUSSION**

A.    **Transfer of Venue Pursuant to § 1404(a)**

Defendants argue that this case could have been brought in the United States District Court for the Eastern District of Pennsylvania and should be transferred to that Court.  Under § 1404(a), a court may transfer an action to any other proper venue for the convenience of the parties or in the interest of justice. See 28 U.S.C.A. § 1404(a).[2]  Unlike § 1406(a)[3] which requires transfer or dismissal because the case was brought in the wrong district, under § 1404(a), the venue is proper but the district court has the discretion to transfer a case for the convenience of the parties or in the interest of justice.  See Sinochem Intern. Co. Ltd. v. Malaysia Intern., 127 S.Ct. 1184, 1990-91 (2007) (relying on Goldlawr, Inc. v. Heiman, 369 U.S. 463 (1962)); Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (finding that § 1404(a) was intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case

---

[2]  Section 1404(a) states, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C.A. § 1404(a).

[3]  Section 1406(a) states, "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C.A. § 1406(a).

consideration of convenience and fairness.")(citing Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)); Lafferty v. St. Riel, 495 F.3d 72 (3d Cir. 2007)(stating that "Section 1404(a) transfers are discretionary determinations made for the convenience of the parties and presuppose that the court has jurisdiction and that the case has been brought in the correct forum.") (citing Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995) and 17A Moore's Federal Practice, § 111.02 (Matthew Bender 3d ed. 2006)). The burden of showing a need for transfer is on the movant. In re Amendt, 169 Fed.Appx. 93 (3d Cir. 2006)(citing Jumara, 55 F.3d at 879).

Generally, when considering a motion to transfer under § 1404(a), district courts not only weigh the enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), but also can "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Jumara, 55 F.3d at 879 (citing 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3847 (2d ed. 1986)). While there is no definitive formula or list of factors to consider for a motion to transfer under § 1404(a), often courts consider certain private and public factors. Id.

> The private interests have included:
> plaintiff's forum preference as manifested in

6

the original choice; the defendant's
preference; whether the claim arose
elsewhere; the convenience of the parties as
indicated by their relative physical and
financial condition; the convenience of the
witnesses-but only to the extent that the
witnesses may actually be unavailable for
trial in one of the fora; and the location of
books and records (similarly limited to the
extent that the files could not be produced
in the alternative forum).

The public interests have included: the
enforceability of the judgment; practical
considerations that could make the trial
easy, expeditious, or inexpensive; the
relative administrative difficulty in the two
fora resulting from court congestion; the
local interest in deciding local
controversies at home; the public policies of
the fora; and the familiarity of the trial
judge with the applicable state law in
diversity cases.

Id. at 879-80.

     Taking into account the enumerated factors of convenience of

the parties, convenience of the witnesses, and interests of

justice, defendants have not met their burden in showing that

this case should be transferred under § 1404(a).  The convenience

of parties, convenience of witnesses, and interests of justice

weigh in favor of keeping the case in this Court.  New Jersey is

the location where plaintiff is located, where she worked, and

the residence of several witnesses, including key witnesses from

NJM which is located in New Jersey.  It is also the situs of the

alleged fraud.  Defendants argue, however, that they are located

in Pennsylvania and some of the witnesses are located in

Pennsylvania, thereby making the Eastern District of Pennsylvania a more convenient forum.  They rely on the decision in Folcher v. Appalachian Insulation Supply, Inc., No. 06-2551, 2006 WL 2864943, at *1 (D.N.J. Oct. 4, 2006), in which the court transferred a case from the District of New Jersey to the Eastern District of Pennsylvania pursuant to § 1404(a).  In Folcher, as here, all the defendants resided in Pennsylvania, including key witnesses, and the plaintiff was terminated from employment with a Pennsylvania company that had no offices in New Jersey.  Id. at *2.  However, in Folcher, the court also found that all of the fact witnesses resided in Pennsylvania, all of the sales and business records were located in Pennsylvania and that plaintiff had not identified a single New Jersey witness.  Id.  Here, the NJM witnesses are located in New Jersey.  Also, the alleged fraudulent bill was sent to a New Jersey company.  Conversations concerning the billing and the alleged adverse employment action, including telephone calls and emails, occurred at least partly in New Jersey.  Moreover, in Folcher the case was transferred to the Reading vicinage of the Eastern District of Pennsylvania which was found to be approximately seventy miles from Cherry Hill, New Jersey, where the plaintiff was located.  Here, defendants state that the courthouse for the Philadelphia vicinage for the Eastern District of Pennsylvania (where this case would be transferred) is only five miles from the courthouse in the Camden vicinage for

the District of New Jersey (where this case is pending).  They
argue that the short distance to Philadelphia from Camden would
not impose any hardship upon the plaintiff.  That argument,
however, cuts both ways.  If the courthouses are only five miles
apart, then it is just as easy for the Pennsylvania defendants
and witnesses to cross the bridge as it is for the plaintiff and
the New Jersey witnesses.  Thus, the § 1404(a) factors weigh in
favor of venue in this Court.

In addition, an analysis of the private and public interests
also support venue in this district.[4]  With regard to the private
interests, the plaintiff chose New Jersey, the state where she
lives, as her forum.  See Piper Aircraft Co. v. Reyno, 454 U.S.
235, 255 (1981) (finding a strong presumption in favor of the
plaintiff's choice of forum in deciding forum non conveniens);
Sinochem Intern., at 127 S.Ct. 1191 (finding the party asserting
that the present forum is inconvenient ordinarily bears a heavy
burden in opposing the plaintiff's chosen forum).  As discussed
above, defendants' choice of forum, the Eastern District of
Pennsylvania, is only five miles from this courthouse and does

---

[4]  In cases where there is only a short distance from the
original forum to the requested transfer forum, some courts have
refused to consider transfer on the basis that § 1404 was not
intended for these types of transfers and decline to even engage
in analysis of private and public interest factors.  Jumara 55
F.3d at 880 (citing 15 Wright, Miller & Cooper § 3854, at 470
(citing cases)).  We do so here at our discretion in the interest
of completeness and because defendants invoked such interests in
their motion.

not impose any inconvenience on the Pennsylvania defendants or witnesses.  The location of books and records are not a concern because what is at issue is a billing statement that can easily be reproduced and there is no allegation that evidence could not be produced in this district.

With regard to the public interests, both the District of New Jersey and the Eastern District of Pennsylvania are equal in the enforceability of a judgment, the practical considerations in conducting a trial, level of congestion on their dockets and the application of local law.  Since plaintiff has alleged that a fraudulent bill was tendered to a New Jersey company, New Jersey's interest in deciding this controversy appears higher than Pennsylvania's interest.  Although Pennsylvania would have an interest in not having its businesses engaging in fraudulent billing practices, New Jersey would seem to have a more acute interest in not having alleged fraudulent bills sent to New Jersey businesses within the state.

Defendants have not met their burden under § 1404 to disturb plaintiff's choice of forum.  The extremely close proximity of the two courthouses undermines defendants' argument that a party, witness or document that can travel to the courthouse in Philadelphia, Pennsylvania could not travel an additional five miles into Camden, New Jersey.  Thus, defendants' motion to transfer venue is denied.

10

**B.**   **Motion to Dismiss Plaintiff's CEPA Claim**

Defendants have also moved to dismiss plaintiff's CEPA claim on the grounds that plaintiff cannot prove that she believed that defendants were violating the law and because defendants did not engage in an adverse employment action because of the alleged whistle-blowing activity.

**(1)   Standard under Fed.R.Civ.P. 12(b)(6)**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  <u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  <u>Bogosian v. Gulf Oil Corp.</u>, 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  <u>Baldwin County Welcome Ctr. v.</u>

11

Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element"). A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

A court reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached

thereto as exhibits, and matters of judicial notice.  <u>Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd.</u>, 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

Here, the defendants attached to their motion the declaration of defendant Robert Kuder.  Attached to Kuder's declaration were: (1) a copy of plaintiff's employment contract and addendum; (2) a copy of an email from plaintiff to Kuder dated December 9, 2007; (3) a copy of an email from plaintiff to Barbara Stone dated December 9, 2007 and email from Kuder to Barbara Eagle instructing Ms. Eagle to place the email in plaintiff's personnel file; (4) a copy of a written warning and probation extension dated December 10, 2007 addressed to plaintiff; and (5) a copy of a letter from plaintiff to Kuder and Miloszar regarding events that occurred during December 6-10, 2007 that are the subject of this lawsuit.

In <u>Pension Benefit</u>, the court was asked to consider a

13

purchase and sale agreement between the parties which was attached to the motion to dismiss, but not the complaint. <u>Id.</u> at 1196.  The Court found that since the allegations in the complaint were based on the contract and described some of its terms, that it was appropriate to consider the document on a motion to dismiss.  <u>Id.</u>  The Court explained that the reason a motion to dismiss is converted to a summary judgment motion when extraneous evidence is submitted by the defense and considered by the court is to afford the plaintiff an opportunity to respond. <u>Id.</u> (citing <u>Cortec Indus., Inc. v. Sum Holding, L.P.</u>, 949 F.2d 42, 48 (2d Cir. 1991), <u>cert. denied</u>, 503 U.S. 960 (1992)).  If a complaint relies on a document, however, then the plaintiff "... is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished."  <u>Id.</u>

Here, although none of these documents were attached to the plaintiff's complaint, plaintiff refers to the emails and written warning in her complaint.  Plaintiff also adopted and incorporated the emails, written warning and her December 10, 2007 letter attached as exhibits to Kuder's declaration in her declaration to her response to the motion to dismiss.  Given that plaintiff referred to the documents in her complaint and adopted and relied upon these documents, we will consider them in determining the motion to dismiss.  <u>See</u> <u>Perilstein v. United Glass Corp.</u>, 213 F.R.D. 252, 253 (E.D.Pa. 2003) (considering

14

correspondence in resolving motion to dismiss because letters were mentioned in the complaint and were central to plaintiffs' claim) (citing <u>Pryor v. Nat'l Collegiate Athletic Ass'n</u>, 288 F.3d 548, 558 (3d Cir. 2002)).  However, the copy of the employment contract and addendum as well as the portion of the email from Mr. Kuder to Barbara Eagle were not referred to by plaintiff in her complaint.  Accordingly, we will not consider those documents in deciding this motion because to do so would effectively convert the motion to dismiss to a motion for summary judgment.[5] <u>See</u> <u>Eisenberg v. Bank of America</u>, No. 07-1361, 2008 WL 2127958, at *2 (M.D.Pa. May 20, 2008)(declining to examine correspondence so as not convert motion to dismiss into a motion for summary judgment) (citing <u>Friedman v. Lansdale Parking Auth.</u>, 151 F.R.D. 42, 44 (E.D.Pa. 1993) for the proposition that a "court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a defendant's Rule 12(b)(6) motion"; 5A Wright & Miller, <u>Federal Practice and Procedure</u>, Civil 2d § 1364)).

### (2) New Jersey CEPA

The New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1, <u>et</u> <u>seq.</u>, provides protection to

---

[5] Even if we did consider those documents, they are not pertinent to this motion and would not change the outcome of the decision.

"whistleblowers" from retaliation by their employer who report their employer's illegal activity. See Reynolds v. TCM Sweeping, Inc., 340 F.Supp.2d 541, 545 (D.N.J. 2004) (citing Hernandez v. Montville Twp. Bd. of Educ., 808 A.2d 128 (N.J.Super.A.D. 2002)). "CEPA is remedial social legislation designed to promote two complementary public purposes: 'to protect and [thereby] encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct.'" Dannunzio v. Prudential Ins. Co. of America, 927 A.2d 113, 120 (N.J. 2007) (citations omitted). "As broad, remedial legislation, the statute must be construed liberally." Id.

A plaintiff who brings a CEPA claim must demonstrate that: (1) she reasonably believed that her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3c; (3) a retaliatory employment action was taken against her; and (4) a causal connection exists between the whistle-blowing activity and the retaliatory employment action. Dzwonar v. McDevitt, 828 A.2d 893, 900 (N.J. 2003).

When bringing a CEPA action a plaintiff "must identify a statute, regulation, rule, or public policy that closely relates to the complained-of conduct," but under section (c), the

16

plaintiff "need not show that his or her employer or another employee actually violated the law or a clear mandate of public policy" only that he or she "reasonably believes" that to be the case.  Turner v. Associated Humane Societies, Inc., 935 A.2d 825, 832 (N.J.Super.A.D. 2007) (citing Dzwonar, 828 A.2d 893; Estate of Roach v. TRW, Inc., 754 A.2d 544 (N.J. 2000); Gerard v. Camden County Health Servs. Ctr., 792 A.2d 494 (N.J.Super.A.D. 2002), cert. denied, 803 A.2d 636 (N.J. 2002)).  Under subsection (c)(3) of CEPA the plaintiff must also make the "additional showing that the 'clear mandate of public policy' is one that 'concern[s] the public, health, safety or welfare or protection of the environment,'" and "must be more than a private disagreement." Id. at 832-33 (citations omitted) (providing the example that the dispute cannot be over the plaintiff's non-compete clause or overtime pay).

Defendants do not contest that plaintiff has met elements two and four of her CEPA claim.[6]  Rather, they argue that

_____

[6]  In support of the second element of her CEPA claim, plaintiff states that she engaged in whistle-blower activity when she objected to the amount of the bill to her supervisor and to the president of RPI.  Whistle-blowing activity  "... consists of disclosing or threatening to disclose to a supervisor or public body the action that violated the law, N.J.S.A. 34:19-3(a)(1), objecting to or refusing to participate in an activity that violates the law, N.J.S.A. 34:19-3(c)(1), or objecting or refusing to participate in an activity deemed incompatible with a clear mandate of public policy, N.J.S.A. 34:19-3(c)(3)."  Turner, 935 A.2d at 833 (finding CEPA claim where employee voiced his objections to his immediate supervisor and to the executive director, as well as to outside counsel after investigation was

plaintiff cannot prove the first and third elements.  With regard to the first element, defendants argue that plaintiff has not identified any rule or law that defendants violated and that plaintiff's allegation of fraud involves only a simple billing dispute.  Plaintiff states that she reasonably believed that her employer fraudulently over-billed New Jersey corporate clients.  She alleges that she learned that there were "similar complaints" when she reported her concerns to her supervisor.  She states that all the bills were kept in a locked room with access denied to all employees of RPI.  She also states that her supervisor would not accompany her to discuss the billing with the president of the company, Mr. Kuder, and that Mr. Kuder refused to discuss the bill with her.  Finally, plaintiff alleges that Mr. Kuder's suggestion to flat-rate the bill, thereby cutting it approximately in half, caused her to question the legality of RPI's billing.

Based on these allegations, plaintiff has alleged "... enough facts to raise a reasonable expectation that discovery will reveal," see Phillips, 515 F.3d at 234, that she reasonably believed that defendants engaged in fraudulent billing practices.

---

commenced).  In support of the fourth element, plaintiff alleges that the adverse employment occurred a few days after she voiced her objection to defendant.  See O'Keefe v. State, Dept. of Labor, 2007 WL 1975603, at *11 (N.J.Super.A.D. July 10, 2007)(finding that demotion of plaintiff a mere twenty-one days after plaintiff reported discriminatory comments supported inference of a causal connection).

A complaint that RPI engaged in fraudulent billing practices goes beyond a private disagreement between plaintiff and defendants and implicates broader public concerns.  Although defendants argue that this case involves no more than a simple billing dispute, at this stage, we view the facts in a light most favorable to the plaintiff.  See Evancho 423 F.3d at 351. Furthermore, CEPA is a remedial statute that must be construed liberally.  Dannunzio, 927 A.2d at 120.  Plaintiff's allegations of fraudulent billing activity touches upon CEPA's dual purpose of protecting and encouraging employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct.[7]  Id.

    With regard to the third element of plaintiff's CEPA claim, defendants argue that plaintiff voluntarily terminated her employment and that being put on probation does not constitute an adverse employment action because plaintiff did not suffer any loss of pay or change in her terms or conditions of employment. Plaintiff argues that the imposition of the probationary period and productivity standard where none previously existed, both of which could lead to termination, amounts to retaliatory conduct.

_____

    [7]  While we may agree with defendant that plaintiff could have done a better job at articulating the exact public policy implicated when a business allegedly engages in fraudulent billing practices, at the motion to dismiss stage, plaintiff has alleged enough facts to allow her to conduct discovery on the issue of whether RPI had a practice of sending out bills that were either inflated or fraudulent which would contravene public policy.

"To qualify as an adverse employment action under CEPA, the employer's action must have a significant impact on the employee's compensation or rank." Noto v. Skylands Community Bank, 2005 WL 2362491, at *4 (N.J.Super.A.D. Sept. 28, 2005) (citing Hancock v. Borough of Oaklyn, 790 A.2d 186 (N.J.Super.A.D. 2002)).  Here, plaintiff has not alleged that the imposition of the probationary period or productivity standard had a significant impact on her compensation or rank.  She has not alleged that her pay or benefits were reduced or that any conditions of her employment were altered.  She has not alleged that the productivity goals imposed as part of her probation were objectively unrealistic or unattainable.  Although she alleges that the probation and productivity standard could lead to termination, and states that she was "forced" to resign, she does not allege that she was terminated by RPI or state facts that could show that she was forced to resign.  The facts as alleged show that plaintiff voluntarily resigned.

A probationary period, without any other significant impact on rank, pay or benefits, has not been found to amount to an adverse employment action.  See Noto, 2005 WL 2362491, at *4 (finding extension of  probationary period resulting in extension of employee not being entitled to full-time benefits because such benefits were contingent upon completion of his probationary period was not tantamount to an adverse employment action sufficient to sustain a CEPA claim); accord Swanson v.

Northwestern Human Services, Inc., No. 06-4923, 2008 WL 1823423, at *1 (3d Cir. 2008) (finding constructive discharge claim lacked merit because circumstances purportedly leading to employee's constructive discharge - extension of his probation and employer's refusal to remove a disciplinary write-up - did not rise to the level of intolerable conditions which would cause a reasonable person to resign); Hancock v. Borough of Oaklyn, 790 A.2d 186, 193 (N.J.Super.A.D. 2002) (examining definition of "retaliatory action" under CEPA statute and citing to Zamboni v. Stamler, 847 F.2d 73, (3d Cir. 1988) cert. denied Stamler v. Zamboni, 488 U.S. 899 (1988) which predicted that the New Jersey Supreme Court would confine the tort of unlawful retaliation to formal personnel actions that have an effect on either compensation or job rank).[8]

Plaintiff has not cited to any case law that would support a holding that imposition of a probationary period that includes productivity standards but without any significant impact on the employee's compensation or rank amounts to an adverse employment action and the existing case law is to the contrary.[9]   Thus,

_____

[8]   Under CEPA, N.J.S.A. 34:19-2(e), "retaliatory action" is defined as "[] the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment."

[9] While we note that both Noto and Swanson involve extensions of probation rather than the initiation of probation found here, we discern no meaningful distinction between the two as neither change the essential "terms or conditions of employment."

plaintiff has not alleged sufficient facts that taken as true could raise a reasonable expectation that discovery would reveal evidence that she suffered an adverse employment action in support of the fourth element of her CEPA claim.  See Phillips, 515 F.3d at 234 (citing Twombly, 127 S. Ct. at 1969).

## IV.  **CONCLUSION**

For the foregoing reasons, defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is denied, but their motion to dismiss plaintiff's claim brought pursuant to New Jersey's Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 et seq. claim is granted pursuant to Fed.R.Civ.P. 12(b)(6).  An Order consistent with this Opinion will be entered.


                              s/Noel L. Hillman
                          NOEL L. HILLMAN, U.S.D.J.


At Camden, New Jersey