UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARIAN R. MARRACCO, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> ROBERT KUDER and, : <br> REHABILITATION PLANNING, INC., : <br> : <br> Defendants. : | Civil Action No. <br> 08-713 (NLH) <br> <br> **OPINION** |

**APPEARANCES:**
JOHN P. MORRIS
142 WEST BROAD STREET
PO BOX 299
BRIDGETON, NJ 08302
*Attorney for plaintiff, Marian R. Marracco*

DANIELLE MYRIAH WEISS
HAINES & ASSOCIATES
1835 MARKET STREET
SUITE 2420
PHILADELPHIA, PA 19103
*Attorney for defendants Robert Kuder and Rehabilitation Planning, Inc.*

**HILLMAN, District Judge**

Before the Court is plaintiff's motion for reconsideration of this Court's Order dismissing her claim brought pursuant to New Jersey's Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 et seq. For the reasons explained below, plaintiff's motion is denied.

**I.   Standard for Motion for Reconsideration**

Motions for reconsideration are not expressly recognized in the Federal Rules of Civil Procedure.  United

States v. Compaction Sys. Corp., 88 F.Supp.2d 339, 345 (D.N.J. 1999). Generally, a motion for reconsideration is treated as a motion to alter or amend judgment under Fed.R.Civ.P. 59(e), or as a motion for relief from judgment or order under Fed.R.Civ.P. 60(b) Id.  In the District of New Jersey, Local Civil Rule 7.1(i) governs motions for reconsideration. Bowers v. Nat'l. Collegiate Athletics Ass'n., 130 F.Supp.2d 610, 612 (D.N.J. 2001).

Local Civil Rule 7.1(i) permits a party to seek reconsideration by the Court in matters "which [it] believes the Court has overlooked" when it ruled on the motion. L.Civ.R. 7.1(i); see NL Industries, Inc. v. Commercial Union Insurance, 935 F.Supp. 513, 515 (D.N.J. 1996).  The standard for reargument is high and reconsideration is to be granted only sparingly.  See United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994).  The movant has the burden of demonstrating either: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)(citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). The Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may alter the disposition of the matter. U.S. v. Compaction Sys.

Corp., 88 F.Supp.2d 339, 345 (D.N.J. 1999); see also L.Civ.R. 7.1(g). "The word 'overlooked' is the operative term in the Rule." Bowers v. Nat'l. Collegiate Athletics Ass'n., 130 F.Supp.2d 610, 612 (D.N.J. 2001)(citation omitted); see also Compaction Sys. Corp., 88 F.Supp.2d at 345.

Ordinarily, a motion for reconsideration may address only those matters of fact or issues of law which were presented to, but not considered by, the court in the course of making the decision at issue. See SPIRG v. Monsanto Co., 727 F.Supp. 876, 878 (D.N.J.), aff'd, 891 F.2d 283 (3d Cir. 1989).  Thus, reconsideration is not to be used as a means of expanding the record to include matters not originally before the court. Bowers, 130 F.Supp.2d at 613; Resorts Int'l. v. Greate Bay Hotel and Casino, Inc., 830 F.Supp. 826, 831 n. 3 (D.N.J. 1992) Egloff v. New Jersey Air National Guard, 684 F.Supp. 1275, 1279 (D.N.J. 1988).  Absent unusual circumstances, a court should reject new evidence which was not presented when the court made the contested decision.  See Resorts Int'l, 830 F.Supp. at 831 n. 3. A party seeking to introduce new evidence on reconsideration bears the burden of first demonstrating that evidence was unavailable or unknown at the time of the original hearing.  See Levinson v. Regal Ware, Inc., No. 89-1298, 1989 WL 205724, at *3 (D.N.J. Dec. 1, 1989).

Moreover, L.Civ.R. 7.1(i) does not allow parties to

restate arguments which the court has already considered.  See G-69 v. Degnan, 748 F.Supp. 274, 275 (D.N.J. 1990).  Thus, a difference of opinion with the court's decision should be dealt with through the normal appellate process.  Bowers, 130 F.Supp.2d at 612 (citations omitted); Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F.Supp. 159, 162 (D.N.J. 1988); see also Chicosky v. Presbyterian Medical Ctr., 979 F.Supp. 316, 318 (D.N.J. 1997); NL Industries, Inc. v. Commercial Union Ins. Co., 935 F.Supp. 513, 516 (D.N.J. 1996) ("Reconsideration motions ... may not be used to re-litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.").  In other words, "[a] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple." Tishcio v. Bontex, Inc., 16 F.Supp.2d 511, 533 (D.N.J. 1998) (citation omitted).

## II.  Plaintiff's Motion for Reconsideration

In its earlier Opinion, the Court found that plaintiff did not allege facts that taken as true could raise a reasonable expectation that discovery would reveal evidence that she suffered an adverse employment action in support of the third element of her CEPA claim.  Marracco v. Kuder, No. 08-713, 2008 WL 4192064, at *8 (D.N.J. Sept. 9, 2008).

A plaintiff who brings a CEPA claim must demonstrate that: (1) she reasonably believed that her employer's conduct was

4

violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3c; (3) a retaliatory employment action was taken against her; and (4) a causal connection exists between the whistle-blowing activity and the retaliatory employment action.  Id. at *6 (citing Dzwonar v. McDevitt, 828 A.2d 893, 900 (N.J. 2003)).  Defendants did not dispute that plaintiff met elements two and four, and the Court found that plaintiff alleged sufficient facts in support of the first element.  Id. (finding that plaintiff alleged sufficient facts that could show that she reasonably believed that her employer had engaged in fraudulent billing practices).

       The Court concluded, however, that plaintiff did not allege facts that could show that a retaliatory employment action was taken against her as required by element three.  Id. at *8.  Plaintiff alleged that a probationary period and productivity standard were imposed.  The Court held that "[t]o qualify as an adverse employment action under CEPA, the employer's action must have a significant impact on the employee's compensation or rank."  Id. (citing Noto v. Skylands Community Bank, 2005 WL 2362491, at *4 (N.J.Super.A.D. Sept. 28, 2005); Hancock v. Borough of Oaklyn, 790 A.2d 186 (N.J.Super.A.D. 2002)).

       The Court found that the plaintiff had not alleged that the imposition of the probationary period or productivity

5

standard had a significant impact on her compensation or rank; that plaintiff had not alleged that her pay or benefits were reduced or that any conditions of her employment were altered; and that plaintiff did not allege facts indicating that the productivity goals imposed as part of her probation were objectively unrealistic or unattainable.  Id.  The Court found that the facts showed that plaintiff voluntarily resigned.  Id.  Accordingly, the Court held that a probationary period, without any other significant impact on rank, pay or benefits, does not amount to an adverse employment action.  Id. at *8.  In making this decision, the Court reviewed as persuasive authority the decisions in Noto, 2005 WL 2362491, at *4 and Swanson v. Northwestern Human Services, Inc., No. 06-4923, 2008 WL 1823423, at *1 (3d Cir. 2008) which held that extending a probationary period does not equal an adverse employment action under CEPA.

       Plaintiff asks this Court to reconsider its decision based on the argument that Noto and Swanson were not published opinions and because in those cases the probationary period had been extended and not imposed.[1]

---

[1] The fact that the Noto and Swanson cases dealt with extension of probationary periods rather than imposition of new probationary periods was not overlooked by this Court but rather directly addressed by the Court in its Opinion.  Marracco, 2008 WL 4192064, at *8 n.9 ("While we note that both Noto and Swanson involve extensions of probation rather than the initiation of probation found here, we discern no meaningful distinction between the two as neither change the essential 'terms or conditions of employment.'").  As plaintiff has raised no

Citation to unpublished opinions is not only permitted under Federal Rule of Appellate Procedure 32.1[2] and 1 NJPRAC R.1:36-3[3], but is widely used. In re Grand Jury Investigation, 445 F.3d 266 (3d Cir. 2006) (acknowledging the rise of non

---

intervening controlling law, newly discovery evidence or need to correct an error of fact or law, or to prevent injustice, there is no basis to reconsider this issue. See G-69 v. Degnan, 748 F.Supp. 274, 275 (D.N.J. 1990) (L.Civ.R. 7.1(i) does not allow parties to restate arguments that court already considered).

[2] Rule 32.1 states

(a) Citation Permitted. A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been:

(i) designated as "unpublished," "not for publication," "non-precedential," "not precedent," or the like; and

(ii) issued on or after January 1, 2007.

The Swanson case was decided in 2008.  Even so, unpublished Third Circuit cases decided before January 1, 2007 can be referred to as persuasive authority.  See In re Grand Jury Investigation, 445 F.3d 266 (3d Cir. 2006).

[3] R. 1:36-3 provides that "[n]o unpublished opinion shall constitute precedent or be binding upon any court." It also states that unpublished opinions should not be cited "[e]xcept for appellate opinions not approved for publication that have been reported in an authorized administrative law reporter...." The comment to the Rule recognizes that "[m]any opinions by appellate and trial courts are unpublished or stamped as unpublished opinions but are available and have been relied upon by both the bench and bar." Here, the Court cited to the unpublished New Jersey Superior Court decision as an example of a court decision that specifically ruled on whether a probationary period constitutes an adverse employment decision under CEPA. Plaintiff has not cited any case law, published or unpublished, that holds otherwise.

published opinions ("NPOs") on-line and in the Federal Appendix series published by West Publishing and stating that the Third Circuit does not prohibit citation to NPOs but regards them only as the opinion of three members of the court in a particular case). Even though Swanson is an unpublished opinion and does not have precedential authority, it is a Third Circuit opinion and, therefore, carries considerable persuasive authority. See Evans v. Chichester School Dist., 533 F.Supp.2d 523, 535 (E.D.Pa. 2008)(stating "[a]lthough I recognize that unpublished opinions lack precedential value, I cite to them in this memorandum as persuasive authority when I find their reasoning convincing and their facts analogous to the situation before me)(citing City of Newark v. U.S. Dep't of Labor, 2 F.3d 31, 33 n. 3 (3d Cir. 1993) ("Although we recognize that this unpublished opinion lacks precedential authority, we nonetheless consider persuasive its evaluation of a factual scenario virtually identical to the one before us in this case.")); Linden v. Sap America, Inc., No.03-3125, 2004 WL 1047719, at *4 (E.D.Pa. May 6, 2004) ("Although unpublished opinions lack precedential value, citation to unpublished opinions is not prohibited under the Third Circuit Local Appellate Rules, and therefore, such opinions may serve as persuasive authority in this Circuit.") (citing L.A.R. 28.3(a) (3d Cir. 2003); City of Newark v. Dep't of Labor, 2 F.3d 31, 33 n. 3 (3d Cir. 1993)).

As for unpublished state court decisions, this Court is not bound by such decisions, but may look to them as persuasive authority in their interpretation of state law such as CEPA.  See In re Kara Homes, Inc., 374 B.R. 542, 548 (Bkrtcy.D.N.J. 2007) (reviewing unpublished New Jersey Superior Court decisions and finding them to be "instructional," but not "informative"); James Const. Co., Inc. v. Director, Div. of Taxation, 18 N.J.Tax 224, 228-29 (N.J. 1999) (agreeing with analysis in unreported bench opinion and quoting it extensively, and stating that if a case is mentioned and quoted at length and not cited as authority, Rule 1:36-3 is not violated)(citations omitted).

In making its decision, the Court did not rely on Noto and Swanson for precedential authority, but rather looked to those decisions as persuasive authority in making its own conclusion as to whether defendants' conduct amounted to an adverse employment decision under CEPA.  Moreover, plaintiff cited no case law, published or unpublished, that holds that CEPA's requirement that plaintiff suffer "an adverse employment decision" is met by the imposition of either a probationary period or productivity standard.  Id.

In her motion for reconsideration, plaintiff cites to Nardello v. Twp. of Voorhees, 873 A.2d 577 (N.J.Super.A.D. 2005), a case she did not cite to in her opposition to the motion to dismiss.  Plaintiff relies on Nardello for the proposition that a

plaintiff who is not discharged, suspended or demoted can make out a CEPA claim by showing that a "series of adverse retaliatory actions" occurred.

First, Nardello was decided in 2005 and, therefore, is not a "change in the intervening law." See Max's Seafood, 176 F.3d 669, 677. If plaintiff believed this case supported her claim, she should have cited to it in her opposition brief. Second, Nardello does not hold that imposition of a probationary period or productivity standard would constitute an adverse employment action under CEPA.

In Nardello, the plaintiff was a lieutenant in charge of the SWAT team for the Voorhees Township Police Department. Id. at 578-82. Plaintiff alleged that he was forced to inform his superiors of cover-ups and alleged misconduct and because of this, he was: "denied permission to obtain firearms instructor training relative to his membership on the SWAT team; coerced to resign as leader and a member of the SWAT team; denied the ability to work on crime prevention programs; [] removed from the detective bureau, with his authority to supervise taken away ... [and] given demeaning jobs for his rank." Id. (noting that plaintiff alleged "thirty pages of incidents" that constituted adverse employment actions his employer took against him). Id. The court found that taken individually the retaliatory actions were relatively minor, but taken collectively, plaintiff made a

10

prima facie case and a jury could conclude that they combined to "demonstrate a pattern of retaliatory conduct that is specifically prohibited." Id.  Although plaintiff had not been discharged, suspended or demoted, the court relied on dicta in a New Jersey Supreme Court opinion, Green v. Jersey City Bd. of Educ., 828 A.2d 883 (N.J. 2003), for the theory that "many separate but relatively minor instances of behavior directed against an employee that may not be actionable individually but that combine to make up a pattern of retaliatory conduct" may constitute an adverse employment action. Id. (recognizing that a state appellate court is bound by dicta issued by its supreme court). Id.

Here, plaintiff does not allege "thirty pages" of incidents but rather one incident that resulted in the imposition of a probationary period and productivity standard.  The number and type of incidents that the New Jersey Superior Court found could collectively amount to an adverse employment action in Nardello are not of the volume and type alleged in this case. Thus, the Nardello case is distinguishable from the facts in this case.

In addition, plaintiff argues that this Court should not have cited to Hancock v. Borough of Oakland, 790 A.2d 186, 193 (N.J.Super.A.D. 2002) because the state court's analysis in Hancock was "inappropriate." Id. (examining the definition of

11

"retaliatory action" under the CEPA statute and citing to Zamboni v. Stamler, 847 F.2d 73, (3d Cir. 1988) cert. denied Stamler v. Zamboni, 488 U.S. 899 (1988), for its prediction that the New Jersey Supreme Court would confine the tort of unlawful retaliation to formal personnel actions that have an effect on either compensation or job rank). Plaintiff argues that the Third Circuit in Zamboni was interpreting New Jersey's common law tort of wrongful discharge and not the CEPA statute.

This Court did not cite to Zamboni, but to Hancock. In Hancock, the state court interpreted the requirements under CEPA, and viewing the claim in the light most favorable to plaintiffs found that the allegations of retaliation were minor and had no impact on either plaintiffs' compensation or rank. Hancock, 790 A.2d at 193. Plaintiff's disagreement with the reliance by a New Jersey court on a Third Circuit decision is not a properly raised argument on a motion for reconsideration.

Finally, attached to plaintiff's motion for reconsideration was a declaration of plaintiff in support of the motion. Defendants argue that plaintiff improperly tries to raise new facts in her declaration. Plaintiff cannot raise new facts in support of a motion for reconsideration that were known to her at the time of the original motion. See Resorts Int'l, 830 F.Supp. at 831 n. 3. The facts surrounding plaintiff's employment and incidents leading to her terminating her

12

employment were known to plaintiff at the time of the original motion.  See Levinson, 1989 WL 205724, at *3 (party seeking to introduce new evidence on reconsideration bears burden demonstrating that evidence was unavailable or unknown at the time of original hearing).  Thus, plaintiff's declaration does not contain new evidence unknown to her at the time of the original motion and, therefore, it is inappropriate for plaintiff to submit it to the Court in support of her motion for reconsideration.  See Ingersoll-Rand Co. v. Barnett, No. , 2007 WL 81889, at * (D.N.J. Jan. 9, 2007) (rejecting submission of seven new exhibits because information was not unavailable or unknown at the time summary judgment motion was filed and finding it inappropriate to attempt to submit it as part of motion for reconsideration in attempt to expand the record).

Accordingly, there is nothing that the Court overlooked, there is no intervening controlling law, there is no newly discovered evidence, or need to correct a clear error of law or fact, or prevent injustice.  See Bowers, 130 F.Supp.2d at 613; Max's Seafood, 176 F.3d at 677.  Plaintiff's motion for reconsideration will be denied.

### III.  <u>CONCLUSION</u>

For the foregoing reasons, plaintiff's motion for reconsideration is denied.  An Order consistent with this Opinion will be entered.

  s/Noel L. Hillman  
NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

Dated: January 30, 2009